# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan B. Gottschall | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 97 C 3085 | **DATE** | 6/27/2000 |
| **CASE TITLE** | Pamela Kause vs. The Alberto-Culver Company | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☑ Status hearing set for 7/20/2000 at 9:30 A.M..

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ☑ [Other docket entry]  Enter Memorandum Opinion and Order. Defendant's motion for summary judgment [44-1] is granted with regard to the claim of gender discrimination on the basis of disparate treatment and the claim of retaliation, and denied with regard to her claim of gender discrimination on the basis of a sexually hostile work environment for the reasons stated in the attached Memorandum Opinion and Order. Status is set for July 20, 2000 at 9:30 a.m.

(11) ☑ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | **Document Number** |
| | Notices mailed by judge's staff. | | | |
| ✓ | Notified counsel by telephone. | | JUN 2 8 2000 | |
| | Docketing to mail notices. | | date docketed | 54 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| | courtroom deputy's initials | '00 JUN 28 AM 8:13 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

PAMELA KAUSE,  )
               Plaintiff,  )     No. 97 C 3085
      v.  )
                       )
THE ALBERTO-CULVER COMPANY,  )     Judge Joan B. Gottschall
                       )
             Defendant.  )

DOCKETED
JUN 28 2000

## MEMORANDUM OPINION AND ORDER

Plaintiff Pamela Kause ("Kause") brought this action against her former employer, the Alberto-Culver Company ("Alberto-Culver"), alleging gender discrimination (hostile work environment and disparate treatment) in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000(e) *et seq.* ("Title VII"), disability discrimination in violation of the Americans With Disabilities Act, 42 U.S.C. §12111 ("ADA"), and retaliation. In an earlier Memorandum Opinion and Order, this court granted Alberto-Culver's Motion for Summary Judgment on Kause's ADA claim, but denied the motion with regard to the remaining claims because of the parties' deficient 12(M) and 12(N) statements. *Kause v. Alberto Culver Co.,* 1999 WL 756131 (N.D.Ill. Sept. 10, 1999). The parties have filed revised statements of material fact pursuant to Local Rule 56.1,[1] and Alberto-Culver has moved for summary judgment on the remaining counts. For the reasons stated below, defendant's motion is granted in part and denied in part.

I. Background

The facts assumed to be true for purposes of this motion are as follows.[2] Alberto-Culver

---

[1] Local rule 56.1 is the successor to local rule 12.

[2] Unless stated otherwise, the facts are derived from Alberto-Culver's local rule 56.1(a)(3) statement and Kause's response. Kause's response sometimes fails to provide precise

manufactures, distributes, and sells a broad range of products. Its warehouse contains several departments: receiving, parcel post, shuttle dock, checker desk, warehouse and international. On March 6, 1986, Alberto-Culver hired Kause to work in its warehouse. She worked for Alberto-Culver until she quit in August of 1997. Throughout her tenure at Alberto-Culver, Kause held positions covered by the collective bargaining agreement between her employer and the United Steelworkers of America, Local No. 3911.

Kause began work in the Parcel Post Department ("Parcel Post") in 1989. She took over the head position in Parcel Post, Parcel Post Lead, in 1990. At all times while Kause was Parcel Post Lead, there were only two employees in the Parcel Post–Kause and Lois Rico, another female. At various times, a third employee, typically Margaret Brown, would fill in for absences or heavy work loads.

Parcel Post's role at Alberto-Culver was to assist other divisions by picking up envelopes, mailers, samples, and other items and prepare them to be sent out. A formal written job description set out Kause's duties and responsibilities as Parcel Post Lead. The duties included, but were not limited to: checking new orders for signatures, time stamps, and proper address; determining correct UPS postage; maintaining a current inventory of products and filling out order forms for needed replacements; communicating with supervisors, sales representatives and marketing personnel; maintaining a neat, clear, and safe work environment; and performing other

record citations as the rule requires. Where the court has been unable to find evidence supporting the existence of a factual dispute, it has had no choice but to deem Alberto-Culver's 56.1(a)(3) recitation as admitted. Where Kause relies on affidavit testimony that conflicts with her prior sworn deposition testimony, the court will disregard the affidavit. *See Bank of Illinois v. Allied Signal Safety Restraint Systems*, 75 F.3d 1162, 1168 (7th Cir. 1996) ("[P]arties cannot thwart the purposes of Rule 56 by creating 'sham' issues of fact with affidavits that contradict their prior depositions.").

duties as directed by supervisors. Kause Depo. Exhibit 1. Plaintiff was also required to answer the phone. From 1993 through 1997 Kause was supervised by Bill Friebus, supervisor, and Tom Sarabia, the warehouse manager.

In June of 1996, Kause injured her back in a non-work-related car accident, and as a result she took a medical leave of absence from her job at Alberto-Culver. During Kause's absence her position was filled by Rico, and Rico's position was filled by Brown. Kause returned to work in October of 1996 and resumed her position as Lead. Before she was allowed to resume working, she was sent to the company nurse, Cathy Junor, for a return-to-work fitness evaluation. Junor sent her to Rush-Presbyterian-St. Luke's Occupational Health Center occupational health clinic for an evaluation. The Health Center put Kause on a 30 pound weight-lifting restriction for several weeks. She was advised to avoid repetitive bending and to increase progressively her weight-lifting tolerance.

When Kause returned to work after the exam she filed a grievance and complained to the union steward, Laura Rodriguez, about the required examination. Kause contended that Alberto-Culver was harassing her in that other employees were not required to get an exam on their return to work after medical leave. Rodriguez told Kause that she would be paid for her time spent at the Health Center. Despite her reassurances, Kause was upset and stated that she felt that she was being subjected to discrimination and harassment. Rodriguez went to Sarabia and Russ Meyer, the personnel department manager, to inform them of Kause's complaint. They told Rodriguez that the exam was company policy and denied any discriminatory intent behind the exam.

Sarabia was informed of Kause's work restrictions. He gave her a back support belt and

told her to wear it while at work. Kause complained to Sarabia and Junor that the belt did not fit her. According to Kause, Sarabia told her she was being insubordinate. Nonetheless, one week later, Junor sent Kause back to the Health Center where she was fitted for a new belt at the company's expense. Aside from her complaints about the ill-fitting belt, Kause did not ask for any accommodation from the Union or Alberto-Culver relating to her back injury. Kause Depo. 34, 162.

Sarabia never asked Kause to move items that were beyond her weight restrictions, and he told her to seek assistance with heavy objects. Kause Depo. 45, 162. He instructed her to have forklift operators move orders from the first to the second floor Parcel Post Department. Kause Depo. 48-49. He also told her to team lift with Rico or to have another employee, Levy Smith, assist her. On one occasion Sarabia asked Kause to move several large boxes off pallets and on to the floor. He told her that Smith was to move the boxes for her. Kause complained that Sarabia was trying to give her work away and denying her overtime opportunities. Kause Depo. 192-93.

Kause's back injury and the medical restrictions stemming from the injury were temporary. Aside from the weight restrictions, which expired December 1, 1996, plaintiff had no other physical limitations that affected her work or any other major life activity. Kause Depo. 43-45. The weight restrictions did not limit Kause's ability to do her work, nor did they interfere with any other part of her life. Kause Depo. 43-45.

In the first week that Kause was back from medical leave, October 1996, Sarabia met with her several times to discuss new documentation procedures implemented during her absence. Sarabia explained that he expected the housekeeping in Parcel Post to be maintained

4

and gave her two notes discussing the importance of a clean, organized Parcel Post office. During one of their meetings that week, Sarabia asked Kause to read a letter commending the Parcel Post employees' performance while Kause was on leave. She had seen the letter previously because someone had framed the letter and left it on her desk. Kause Affidavit, ¶12. Kause complained to Rico and others that she felt that Sarabia's attempts to have her read the commendation letter were harassment.

On November 5, 1996, Sarabia, Friebus and Kause had a counseling session to discuss problems in housekeeping in Parcel Post and two incidents of miscommunication between Kause and other departments that assigned her work. Kause claims that Sarabia yelled at her during the session. The next day, Kause filed another grievance with the Union alleging that she had been harassed during her first week back from leave. She complained about the return-to-work examination and about Sarabia's verbal harassment. On November 7, Kause met with Rodriguez to discuss the grievance. Rodriguez investigated. A grievance meeting was then held with Kause, Rodriguez, Meyer, Sarabia, Kevin Perry (the union representative), and Mr. Johnson (the plant manager). The company investigated the grievance and denied it. However, the Company and Union agreed to monitor the situation and to have Rodriguez present during disciplinary meetings between Sarabia and Kause. Kause Depo. 222-23.

On November 21, 1996, Sarabia was moving boxes in the warehouse. He was throwing them toward plaintiff and yelled "You better watch it, I'm gonna get you." Kause Aff. ¶18. Kause reported the incident to the police the next morning.

Kause filed another grievance on November 25, 1996 in which she alleged that Sarabia was harassing her and disciplining her without union representation. As in her earlier grievances,

Kause claimed that he was asking her to perform duties outside her job description.[3] Meyer and Rodriguez held a meeting with Kause to respond to her grievance. In the meeting management and the union decided to continue monitoring the situation but denied the grievance. Kause claims that during the meeting Meyer and Rodriguez told her they did not want to be bothered with any more of her claims that Sarabia was harassing her. Kause Aff. ¶19. On December 5, 1996, after several work performance counseling sessions, Sarabia issued Kause a warning for Kause's "failure to follow basic prioritizing procedures" and for "not letting management know of problems." Def. 56.1(a)(3) Statement, ¶34. The warning was issued pursuant to Alberto-Culver's "progressive discipline" policy described in the employee Plant and Safety Rule Book, which is distributed to all employees and applies to all Lead personnel. Early that morning Kause met with Sarabia, Friebus, and Rodriguez. At the meeting Kause accused Sarabia of harassment. Later that day, Kause requested another meeting with Rodriguez and Johnson in which she complained about being harassed at the morning meeting and about the warning. After the meeting, Kause returned to her office to retrieve her personal items and then went to the nurse's office. Kause claims that she went to Friebus first to request permission to go home. Kause Aff. ¶23. She claims he gave her permission to leave. *Id.*

At nurse Junor's office, Kause told Junor that she was feeling ill after the meetings. Junor told Kause to rest for a few minutes. Kause claims that Junor then told her to go home and she did. When Sarabia discovered that Kause had left the premises, he informed Meyer that she had left without permission. Meyer investigated and Friebus told him that he had not spoken to

---

[3] Kause's job description states that the Parcel Post lead "[w]ill perform other duties as directed by supervision." Kause Depo. Ex. 1, p. 3.

Kause or given her permission to leave. Meyer and Johnson determined that Kause violated the company's rule against leaving work without permission and determined, pursuant to the corrective action mandated in the rule book, that Kause would receive a three-day suspension.

When Kause returned to work on December 9, 1996, Meyer–in the presence of union representatives Rodriguez and Perry–issued her a written warning and a three-day suspension. Two days later, Kause filed a grievance to protest this discipline. She claimed that she had obtained permission to leave from Friebus before seeing Junor. Meyer re-investigated the events on December 5 by speaking with various individuals involved. At a meeting attended by Kause, Sarabia, Rodriguez, Perry, Rico, and Meyer, Meyer denied the grievance. Management and the union discussed ways to resolve Kause's problems. During the meeting Kause complained that her work was being given away to Levy Smith and Margaret Brown, resulting in a denial of overtime. At the same time she complained that Sarabia was increasing her workload.

Kause was issued another written warning on December 16, 1996 for negligence. The warning resulted from a complaint by Victoria Kennedy, a company sales specialist, to Sarabia regarding Kause's failure to make a pick-up on December 12, 1996. Kause states that the pick-up was made the next morning. Kause was informed that any future warnings within the next six months would result in a five-day suspension.

Kause filed a grievance complaining of the December 16 warning on December 19, 1996. In it, she accused Kennedy of lying and implicated Rico in the miscommunication. Her grievance was denied on January 2, 1997 after an investigation. Management concluded that the grievance lacked merit.

Kause filed a charge with the Equal Employment Opportunity Commission ("EEOC") on

December 10, 1996, complaining of sex and disability harassment and discrimination. Kause's charge is based on alleged harassment and threats by Sarabia. Her harassment complaints were not of an overtly sexual nature, as she admits: Sarabia never touched her; he never asked her out on dates; he never asked her to have sex with him; and he never made sexual comments or acted in a sexual way toward her. Alberto-Culver was notified of the charge on December 27, 1996.

Kause filed a second charge on January 17, 1997 alleging retaliation in the form of the written warning on December 16, 1996 and because on December 17 some of her keys, cart, and support belt were allegedly missing and her computer had been tampered with. In her deposition, Kause testified that she did not believe that her missing items and computer problems were the result of harassment or retaliation. Kause Depo. 109.

Kause requested a transfer on December 13, 1996. She claims that at a January union meeting, Rodriguez and the union president told her that she could receive a transfer to shipping if she agreed to drop her EEOC charges. She did not drop the charges but was awarded a transfer to the shipping department as an Order Filler on January 27, 1997. Kause moved to a different building where she had no further contact with Sarabia. In August 1997 Kause resigned from her Order Filler position because she could not keep up with the work quotas. Kause Depo. 240.

In the Parcel Post department, Kause was replaced by Lois Rico, a woman who had taken at least eight medical leaves of absence (including one for a car accident that resulted in neck and back problems). Rico had no difficulties with Sarabia.

II. Discussion

A. Summary Judgment standard

Summary judgment is appropriate when "the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56. This standard is applied with "added vigor in employment discrimination cases, in which intent and credibility are crucial issues." *Drake v. Minnesota Mining & Mfg. Co.*, 134 F.3d 878, 883 (7th Cir. 1998). The moving party has the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The evidence is considered in the light most favorable to the nonmovant and all justifiable inferences are resolved in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, the nonmovant must produce "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

## B. Gender Discrimination

Kause claims that Alberto-Culver discriminated against her because she is female. The trouble began when she returned from leave in October 1996 when she was subjected to the following: she was allegedly unfairly disciplined; she was denied overtime; and she was verbally harassed by her supervisor. She sues under two Title VII theories: disparate treatment and sexually hostile work environment.

"Title VII prohibits 'discriminat[ion] . . . because of . . . sex' in the 'terms' or 'conditions' of employment." *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 79-80 (1998) (alterations in original). Thus, the threshold issue is whether Kause was subjected to disadvantageous terms or conditions of employment to which males were not subjected. *Id.*

Kause has provided no direct proof that Alberto-Culver discriminated against her on the basis of her sex. In the absence of direct proof, Kause must rely on the familiar burden-shifting framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973). Under *McDonnell Douglas*, the plaintiff has the burden of offering a prima facie case of discrimination. To establish a prima facie case of disparate treatment sex discrimination Kause must show that (1) she belongs to a protected class; (2) she performed her job satisfactorily; (3) she suffered an adverse employment action; and (4) her employer treated similarly situated employees outside the protected class more favorably. *Lenoir v. Roll Coaster, Inc.*, 13 F.3d 1130, 1132 (7th Cir. 1994). Once the plaintiff has established a prima facie case, the burden of production shifts to the defendant, who must offer a legitimate, nondiscriminatory reason for the challenged action. If the defendant puts forward such a reason, then to survive summary judgment, the plaintiff must demonstrate a genuine issue of material fact as to whether the reason is merely pretextual. *Id.*

1. Disparate Treatment

Alberto-Culver first argues that Kause has failed to make out prima facie case of disparate treatment under the *McDonnell Douglas* burden shifting approach. In particular, Alberto-Culver claims that, with the exception of the three-day suspension for leaving work without permission and perhaps the refusal to permit her to work overtime every day, Kause did not suffer any adverse employment action.

Kause's claims of gender discrimination and retaliation require her to show that she suffered a materially adverse employment action. *See, e.g., Sweeney v. West*, 149 F.3d 550 (7th Cir.1998); *Gonzalez v. Ingersoll Milling Machine Co.*, 133 F.3d 1025, 1032 (7th Cir.1998). In

particular,

> a materially adverse change in the terms and conditions of employment must be more disruptive than a mere inconvenience or an alteration of job responsibilities. A materially adverse change might be indicated by termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation.

*Rabinovitz v. Pean*, 89 F.3d 482, 488 (7th Cir.1996) (*quoting Crady v. Liberty Nat'l Bank & Trust Co.*, 993 F.2d 132, 136 (7th Cir.1993)) (citation omitted). Although "[a]dverse employment action has been defined quite broadly in this circuit . . . not everything that makes an employee unhappy is an actionable adverse action." *Smart v. Ball State Univ.*, 89 F.3d 437, 441 (7th Cir.1996). Furthermore, "minor and trivial employment actions . . . and employment actions that merely inconvenience the employee . . . are not actionable." *Daulo v. Commonwealth Edison*, 938 F. Supp. 1388, 1397 (N.D. Ill. 1996).

Alberto-Culver first argues that Kause's complaints that she was asked do "secretarial" and "housekeeping" tasks not required of male Leads are without basis because the tasks were part of her written job description. These tasks were specifically included in her job description: cleaning, time stamping, filing, ordering supplies, and addressing. Kause Depo. Ex. 1. Whether or not plaintiff considers these tasks "secretarial" or "housekeeping" does not change the fact that these were duties for which she became responsible when she accepted the Parcel Post Lead position. Furthermore, Kause concedes that as a department lead she was required to perform general housekeeping tasks. Pl. Resp. ¶58. Requiring Kause to do her job does not constitute an adverse employment action. *See Hardy v. City of Country Club Hills*, No. 97 C 188, 1998 WL 901704, *4 (N.D. Ill. Dec. 17, 1998) ("[A]n employee being asked to clean up her work area, in

accordance with the employer's requests, is not evidence of a material adverse employment action.").

Kause claims that defendant denied her overtime opportunities in Parcel Post and refused to allow her to rotate into other lead positions for overtime. The denial of overtime had a tangible economic effect on Kause, an hourly employee, because it reduced her pay. Therefore, the court concludes that the denial of overtime was an adverse employment action under Title VII. *See Burlington Indus. Inc. v. Ellerth*, 524 U.S. 742, 762 (1998) ("tangible employment action in most cases inflicts direct economic harm"); *Coleman, v. Pepsi-Cola General Bottlers, Inc.*, No. 97 C 4898, 1998 WL 901675 (N.D. Ill. Dec. 21, 1998) (reduction in overtime constituted adverse action).

Kause complained about falling fibre ceiling tiles and exposed circuit wires in and around her office, and she complained to Alberto-Culver managers about the conditions before she went on medical leave. The falling ceiling tiles were repaired before plaintiff returned from leave. The circuit box was fixed within one week. Plaintiff failed to show how these temporary conditions materially affected her job. There is no indication that these conditions were anything more than an inconvenience. Consequently, they cannot form the basis of an employment discrimination claim. *See Crady v. Liberty Nat'l Bank and Trust Co.,* 993 F.2d 132, 136 (7th Cir. 1993) ("a materially adverse change in the terms and conditions of employment must be more disruptive than a mere inconvenience").

Kause was formally disciplined on three occasions. She received a verbal warning on December 5, 1996; a three-day suspension on December 9, 1996; and a written warning on December 16, 1996. The suspension is an adverse employment action. It resulted in a change in

her employment situation; she was denied work and pay for three days. *See Hunt-Golliday v. Metropolitan Water Reclamation Dist. of Greater Chicago*, 104 F.3d 1004, 1014 (7th Cir. 1997). Standing alone, reprimands, deserved or not, do not constitute adverse action. *Smart*, 89 F.3d at 442. However, when considered with plaintiff's other allegations, they can constitute adverse action. *See id.* At this stage, the court will assume that the three discipline actions constitute adverse employment actions.

Several of Kause's complaints are time-barred. She alleges that defendant provided her with inferior access to a computer, locker, restroom, and outside phone line. She also alleged that her office frequently filled with fumes from chemical testing on the floor below. In Illinois, a complainant must file a charge with the EEOC within 300 days of the alleged discriminatory act. Failure to do so renders the charge untimely. *Filipovic v. K & R Express Sys., Inc.*, 176 F.3d 390, 396 (7th Cir. 1999). *See* 42 U.S.C. §2000e-5(e). All of the conditions alleged existed for well over 300 days prior to the filing of her EEOC charge. The record indicates that plaintiff became aware of the chemical fumes at least a year before her leave (one and a half years before she filed her charge), and became aware of the other conditions no later than 1990 (when she took over the Parcel Post Lead position). Hence, these claims are barred.[4]

In sum, the denial of overtime and the disciplinary actions are the only adverse employment actions that could support Kause's claim of gender discrimination. The court will

---

[4]Kause is also unable to obtain relief for these acts under the "continuing violation" doctrine. A claimant may obtain relief for a time-barred act of discrimination by linking it with acts that fall within the statutory limitations period. The claimant must show that the time-barred acts were "related closely enough" to acts occurring within the established time frame "to be considered one ongoing violation." *Filipovic*, 176 F.3d at 396 (citation omitted). Here, Kause has made no effort to show how the time-barred acts are related to the acts that occurred after she returned from her leave, so the continuing violation doctrine does not apply.

next determine whether these adverse actions are sufficient to defeat a summary judgment motion.

Overtime Opportunities

Kause alleges as an adverse action that male Leads were allowed to work overtime on a regular basis and that she was not. Alberto-Culver counters that she was not similarly situated to the male Leads in the other departments, who had duties that differed from hers.

In order to show that Kause is similarly situated to the other employees, she must show that the employment circumstances of the compared employees are similar in all relevant aspects. *United States Equal Employment Comm'n v. Foster Wheeler Constructors, Inc.,* 1999 WL 528196, *5 (N.D.Ill. 1999); *Riley v. Lutheran General Hospital,* 1999 WL 184163, *6 (N.D.Ill. 1999); *Blackwell v. Bob Evans Farms, Inc.,* 1996 WL 406654, *4 (N.D. Ill. 1996). With regard to overtime, the record indicates that Kause was not similarly situated to the other Leads because the other leads had different job responsibilities and work situations. Alberto-Culver showed that the other Leads worked in departments that had 24-hour shifts. Friebus Aff. ¶3; Sarabia Depo. 14. Shipments came in at all hours. Therefore, it was often necessary to have some of the Leads come in a half hour or one hour early to prepare their work areas for the next shift. Friebus Aff. ¶3. In contrast, Kause's department, Parcel Post, is a one-shift department, Kause Depo. 131, and work did not accumulate overnight or on the second shift. Friebus Aff. ¶3. Indeed, Kause conceded in her deposition that she did not know if the duties performed by the other Leads were the same as her duties. Kause Depo. at 129. Because the relevant aspects of the employment circumstances of the various department Leads differed, Kause has failed to show that she was similarly situated to the male Leads in the other departments.

## Disciplinary Action

Kause complains that she was subjected to discriminatory and pretextual disciplinary actions. The first of these actions was issued on December 5, 1996. On that date, after several counseling sessions, defendant issued plaintiff a written copy of a verbal warning for Kause's "failure to follow basic prioritizing procedures and not letting management know of problems." Def. 56.1(a)(3) Statement, ¶34. The record indicates that defendant issued the warning in accordance with its progressive discipline procedures and plaintiff admitted that these procedures apply to all Lead personnel. Kause acknowledges receiving the warning. *See* Def. 56.1(a)(3) Statement ¶34; Pl. Resp. ¶34. However, she does not admit that the warning was warranted. Alberto-Culver produced no evidence to show that Kause actually did "fail[] to follow basic prioritizing procedures" or fail to "let[] management know of problems." Thus, Alberto-Culver has not shown that its nondiscriminatory reason for the warning is legitimate. A genuine issue of fact persists regarding this disciplinary action.

The second disciplinary action took place on December 9, 1996, when Kause was suspended for leaving work without permission. Kause avers that she had permission from Friebus and the nurse to leave because she was not feeling well. Kause Aff. ¶23. When Sarabia discovered that Kause had left the premises, he informed Meyer, the personnel manager, that Kause had left without permission. Sarabia Depo. 99, 101. Meyer investigated. Meyer Aff. ¶¶15, 18. He questioned Friebus, and Friebus said that he had not spoken to Kause or given her permission to leave. *Id.*; Friebus Aff. ¶¶9, 10. He also questioned the nurse, who denied giving Kause permission to leave. Meyer Aff. ¶18. Meyer consulted with the plant manager and they determined that Kause had violated the company's rule against leaving without permission and

that she would be given a suspension as mandated by the rule book. Meyer Aff. ¶¶15-18; Meyer Aff. Ex. F.

Even if Meyer was incorrect in finding that Kause left without permission, Kause has failed to show that Alberto-Culver did not honestly believe that she left without permission. Once Alberto-Culver proffered nondiscriminatory reasons, it was Kause's burden to show that these reasons were pretextual, "[which] means a lie, specifically a phony reason for some action." *Russell v. Acme-Evans Co.*, 51 F.3d 64, 68 (7th Cir.1995). Rebuttal must include facts tending to show that the employer's reason for the adverse job action is false, thereby implying that the real reason for the action is illegal discrimination. *Kariotis v. Navistar Int'l Transp., Corp.*, 131 F.3d 672, 677 (7th Cir.1997). As evidence of pretext, Kause claims that Sarabia "would make comments to me about how my job was a man's job and about how he was planning on writing me up until I lost my job." Kause Aff. ¶9. However, Sarabia was not involved in this incident or the decision to suspend. Kause claims to have asked Friebus for permission to leave, and the decision to suspend Kause was made by Meyer and Johnson. Kause has failed to offer any facts that tend to show that Alberto-Culver's reason was pretextual; "a reason honestly described but poorly founded is not a pretext as that term is used in the law of discrimination." *Id.*

The final disciplinary action occurred on December 16, 1996, when Kause was issued another warning for negligence. Alberto-Culver asserts that the warning was issued pursuant to a complaint from Victoria Kennedy, a company sales specialist, regarding Kause's failure to make a package pick-up on December 12. Def. 56.1(a)(3) Statement ¶44; Sarabia Depo. Ex. 3; Meyer Aff. ¶20, Ex. E. Meyer investigated the incident and agreed to issue the warning. Meyer Aff. ¶20. In her affidavit, Kause disputes Kennedy's complaint and avers the following:

> On December 12, 1996 after 2:30PM, I received a phone call from Victoria Kennedy regarding a package pick-up. I asked her if the package was overnight. She replied, no ground shipment. I told her that it would be picked up the next morning since the package was not a priority and Kennedy had called after the last pickup for that day. The package was picked up the next day in accordance with procedures issued by Sarabia.

Kause Aff. ¶25. Kause's dispute of the basis of Kennedy's complaint fails to show that Alberto-Culver's reasons are pretextual. Again, Sarabia was not involved: Kennedy made the complaint and Meyer investigated. At most, the record indicates that Alberto-Culver made a mistake in taking Kennedy's complaint as a basis for the warning.

Kause has shown a genuine issue of fact in relation only to the December 5 warning. This warning standing alone is insufficient to form the basis of a triable disparate treatment claim because, standing alone, it cannot constitute adverse employment action. *See Smart*, 89 F.3d at 442. The evidence indicates that the warning did not have any materially adverse impact on Kause's job. She was not demoted, terminated, given a less distinguished title, or denied benefits. Accordingly, the warning that Kause received is insufficient to support a prima facie case of employment discrimination because it is not a materially adverse employment action. Summary judgment is therefore granted as to the disparate treatment claim.

2. Hostile Work Environment

Kause alleges that she was subjected to a sexually hostile work environment at Alberto-Culver. She alleges that Sarabia began harassing her when she returned from medical leave. Kause's affidavit described the following occurrences. On her first day back from leave Sarabia approached her and yelled at her, stating that she should "have all parts numbers in parcel post memorized and that he wanted all the inventory" moved by the end of the day or she would be written up. Kause Aff. ¶8. On a daily basis he yelled at her several times a day and threatened to

write her up until she was fired. Kause Aff. ¶9. He commented that her job was a man's job. *Id.* He told her to smile or she would be written up. Kause Aff. ¶14. He forced her to read a letter that suggested her department was run better while she was on leave. Kause Aff. ¶12. On one occasion he allegedly threw boxes at her and said, "You better watch it, I'm gonna get you." Kause Aff. ¶18. The harassment occurred primarily when Sarabia dealt with her in private and it was virtually incessant.

"The first question in a case like this one is 'whether the plaintiff was, because of her sex, subjected to such hostile, intimidating, or degrading behavior ... as to affect adversely the conditions under which she worked.'" *Perry v. Harris Chernin, Inc.*, 126 F.3d 1010, 1013 (7th Cir. 1997) (quoting Carr v. *Allison Gas Turbine Div., General Motors Corp.*, 32 F.3d 1007, 1009 (7th Cir. 1994)). The work place that is actionable is one that is "hellish." *Id.* "[H]arassing conduct need not be motivated by sexual desire to support an inference of discrimination on the basis of sex." *Oncale*, 523 U.S. at 80. If the plaintiff was subjected to an actionable workplace, she must then show that the defendant's response or lack thereof to its employees' behavior was negligent. *Carr*, 32 F.3d at 1009.

Kause presents evidence to suggest that Sarabia's conduct was gender-based. In particular, she states in her affidavit that Sarabia "would make comments to me about how my job was a man's job and about how he was planning on writing me up until I lost my job." Kause Aff. ¶9. This is sufficient evidence that the harassment was gender-related to support an inference of a sexually hostile work environment. *See Sarsha v. Sears, Roebuck & Co.*, 3 F.3d 1035, 1041 (7th Cir. 1993) (nonmoving party's own affidavit or deposition will constitute affirmative evidence to defeat a summary judgment motion). Summary judgment therefore is

denied on Kause's hostile work environment claim.

## C. Retaliation

Finally, Kause charges Alberto-Culver with retaliation in violation of Title VII, claiming that after she filed two union grievances in November and an EEOC charge in December of 1996, her supervisor, Sarabia, retaliated against her. She claims that she was disciplined three times and that he increasingly yelled at her after the complaints were made. Kause's retaliation claim is based on the same verbal harassment and the same three disciplinary actions that were addressed in this court's discussion of Kause's gender discrimination claim, *supra*.

To facilitate EEOC investigations and to give notice to defendants of the charged conduct, Title VII requires a plaintiff to file an EEOC charge that encompasses all the claims she plans to raise in her complaint to the district court. *Cheek v. Western and Southern Life Ins.*, 31 F.3d 497, 499 (7th Cir.1994). Plaintiff's second EEOC charge, *in toto*, states:

> I. I have been employed by the Respondent since 1986 and my current position is that of Line Lead in Parcel Post. On December 10, 1996 I filed a charge of discrimination with the EEOC (Charge #: 210970809), and since I have filed this charge, I have been increasingly harassed by the manager of my department, Mr. Tom Sarabia. On December 17, 1996 my key to my office, my support belt and my two-wheeled cart came up missing and my computer was tampered with.
>
> II. Respondent stated that I had been written up for negligence. Respondent has not provided a reason for the harassment to which I have continually been subjected.
>
> III. I believe that I have been retaliated against for filing a former charge of discrimination with the EEOC in violation of Title VII of the Civil Rights Act of 1964, as amended, and the Americans with Disabilities Act of 1990, in that I have been harassed and written up for pretextual reasons.

Alberto-Culver first argues that Kause's retaliation claim is limited to discrete allegations of harassment/retaliation occurring on December 16, 1996, and the incident where Kause's

equipment was misplaced and her computer was "tampered with" on December 17, 1996. However, Kause asserts two additional incidents of protected expression: two union grievances complaining of harassment filed in November 1996. She also asserts two additional incidents of retaliation, both discussed previously: the written copy of a verbal warning on December 5, 1996, and a suspension on December 9, 1996. The issue is whether these additional claims fall within the scope of her EEOC charge.

A Title VII claim is within the scope of the EEOC charge, if "there is a reasonable relationship between the allegations in the charge and the claims in the complaint, and the claim in the complaint can reasonably be expected to grow out of an EEOC investigation of the allegations in the charge." *Cheek*, 31 F.3d at 500. The two additional disciplinary actions alleged are similar to the one alleged in the charge. In her charge, plaintiff stated "On December 16, 1996 I was written up . . . ." An EEOC investigation of this allegation would likely turn up additional disciplinary actions in the same time period. Accordingly, the additional incidents are within the scope of the charge.[5]

To establish a prima facie case of retaliation under Title VII, plaintiff must show (1) she engaged in statutorily protected expression; (2) she suffered an adverse action by her employer; and (3) there is a causal link between the protected expression and the adverse action. *Holland v. Jefferson Nat'l Life Ins. Co.,* 883 F.2d 1307, 1313 (7th Cir. 1989). After the plaintiff establishes

---

[5] It is questionable whether the November grievances are within the scope of plaintiff's charge given that the charge clearly suggests that the retaliatory acts occurred after the first EEOC charge was filed: "[S]ince I filed this charge, I have been increasingly harassed by the manager of my department, Mr. Tom Sarabia." But, the court does not read the Title VII requirements and case law to mean that every potential cause of the retaliation must be enumerated in the charge. The court need not resolve this issue because plaintiff's claim fails for other reasons.

a prima facie case, the traditional *McDonnell Douglas* burden-shifting analysis applies. *Griffin v. Board of Regents of Regency Univ.*, 795 F.2d 1281, 1294 (7th Cir.1986).

In order to demonstrate a causal link between Sarabia's harassment and the complaints, Kause "must demonstrate that [Sarabia] would not have taken the adverse action 'but for' the protected expression." *Johnson v. University of Wisconsin-Eau Claire*, 70 F.3d 469, 479 (7th Cir. 1995). A causal link can often be inferred from suspicious timing. *Adusumilli v. City of Chicago*, 164 F.3d 353, 363 (7th Cir. 1998), *cert. denied*, —U.S.—, 120 S.Ct. 450 (1999). Two events that are not closely associated in time or an adverse action that occurs before the protected activity will not support an inference of a causal link. *Davidson v. Midlefort Clinic, Ltd.*, 133 F.3d 499, 511 (7th Cir. 1998).

Kause satisfies the first and second elements of the prima facie case. Kause's EEOC charge and the November 1996 grievances constitute statutorily protected expression, and the court will assume that the disciplinary action and the yelling incidents constitute adverse action. However, Kause's claim stumbles on the third element, causal link. Given that Kause asserts that when she returned from her medical leave in October 1996 Sarabia "privately reprimanded [her] on a daily basis, several times a day, by yelling at her and criticizing her work," Kause Aff. ¶9, it is difficult to see how her November and December complaints could have been the "but for" cause of his subsequent tirades. Kause has pointed to no evidence in the record to support a finding that she would not have been harassed, beginning in October, if she had not complained in November and December. The claims of verbal harassment therefore do not support Kause's prima facie case.

Alberto-Culver argues that Kause cannot establish a causal link between any of the

disciplinary actions and her EEOC charge. Sarabia gave her the warning on December 16. He avers that he did not learn that Kause had complained to the EEOC or the Illinois Department of Human Rights until the last few days of December 1996. Sarabia Depo. 109, 130; Meyer Aff. ¶28. Kause has no evidence to rebut this. Pl. Resp. ¶78. "[T]here generally can be no causal link between protected activity and an adverse employment action if the employer remained unaware of the protected activity." *Dey v. Colt Construction & Development Co.*, 28 F.3d 1446, 1458 (7th Cir. 1994).

To surmount this problem, Kause contends that even if Sarabia did not know of the EEOC charge, he did know of the November grievances. Alberto-Culver does not dispute that Sarabia knew of the November grievances. The November grievances and the disciplinary actions were approximately four weeks apart. The temporal proximity of these events is sufficient to raise an inference of a causal nexus between her protected expression and the disciplinary action. *See Adusumilli*, 164 F.3d at 362 ("It is settled in this Circuit that, 'a plaintiff may establish . . . a [causal] link [between protected expression and adverse action] through evidence that the discharge took place on the heels of protected activity.'") (citations omitted) (alterations in original). Thus, plaintiff has established a prima facie case based on the disciplinary actions.

However, Kause's retaliation claim fails at the pretext stage. Under the *McDonnell Douglas* framework for either a discrimination claim or a retaliation claim, Kause must establish that Alberto-Culver's reason for the adverse action was pretextual. *Essex v. United Parcel Serv., Inc.*, 111 F.3d 1304, 1309 (7th Cir. 1997). Here, Alberto-Culver has proffered nondiscriminatory reasons for two of the three disciplinary actions–the December 16 warning and the December 9

suspension–reasons that Kause has failed to rebut. *See Gender Discrimination discussion, supra*. Kause raised a question of fact only in relation to the December 5, 1996 warning. However, the reprimand standing alone does not constitute a materially adverse employment action and cannot be the sole basis of a triable retaliation claim. *See Sweeney*, 149 F.3d at 556 (reprimands without tangible job consequences cannot constitute adverse employment action). Because Kause has failed to establish that Alberto-Culver's reasons for the disciplinary actions were pretextual, her retaliation claim must also fail.

III. Conclusion

For the reasons stated above, Alberto-Culver's motion for summary judgment is granted with regard to the claim of gender discrimination on the basis of disparate treatment and the claim of retaliation, and denied with regard to her claim of gender discrimination on the basis of a sexually hostile work environment.

ENTER:

JOAN B. GOTTSCHALL
United States District Judge

DATED: June 27, 2000